UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>GILBERTO SALAZAR-ROJAS, *et al.*,<br><br>        Defendants. | Case No. CR13-49RSL<br>             CR13-50RSL<br><br>ORDER DENYING MOTION TO SUPPRESS AND MOTION TO COMPEL DISCOVERY |

This matter comes before the Court on "Defendant Salazar-Rojas' Motion To Suppress Evidence Obtained By Unlawful Interception Of Telephonic Communications," Dkt. # 487, in which defendants Cruz-Cruz, Gutierrez and Cruz-Olivero join, Dkt. # 491; Dkt. # 492; Dkt. # 247 (CR13-49RSL); and defendant Salazar-Rojas' "Motion To Compel Supplemental Discovery In Support Of Request For Franks Hearing," Dkt. # 515.[1]  Having reviewed the memoranda and exhibits submitted by the parties, and having heard the parties' arguments at the January 15, 2015 hearing, the Court finds as follows.

## I. BACKGROUND

This case arises out of a 10-month investigation into the Salazar drug trafficking organization ("Salazar DTO"), which culminated on or about February 6, 2013 with the

---

[1] Unless otherwise indicated, "defendant" herein refers to Salazar-Rojas, and docket numbers relate to case matter CR13-50RSL.

ORDER DENYING MOTION TO SUPPRESS
AND MOTION TO COMPEL DISCOVERY- 1

execution of several arrest warrants and yielded indictments against multiple defendants. Dkt. # 476 (Order Denying Motion to Suppress) at 1-2. Several wiretaps targeting defendant and intercepting his calls were authorized by the Honorable Richard A. Jones of this District; the government has stated that the only wiretaps it intends to use as evidence in this case are those authorized by Judge Jones. Dkt. # 522 at 3. Defendant was also targeted and intercepted by wiretaps authorized by the Honorable Lawrence J. O'Neill of the Eastern District of California; the contents of several calls intercepted by wiretaps authorized by Judge O'Neill were included in affidavits for wiretaps authorized by Judge Jones. Dkt. # 513 at 46-51. Defendant claims standing to directly challenge ten total wiretap orders issued by these two judges. Dkt. # 519 at 8.

Defendant claims to have identified 80 separate wiretap orders relating to eight cases (including his own) spanning six years (2007-2013) targeting the same or related DTOs in four states, and argues that the validity of these wiretap orders and the fruits of these investigations have bearing on whether evidence may be suppressed in this case. Dkt. # 487 at 2-3; Dkt. # 523 (Def. Reply Compel) at 1. Defendant seeks to compel discovery relating to these other investigations and to suppress the evidence obtained from the wiretaps in this case. Dkt. # 523.

Defendant argues that the government's applications for the wiretaps that defendant has standing to challenge ("defendant's wiretaps") did not comply with Title III of the Omnibus Safe Streets and Crime Control Act of 1968, 18 U.S.C. §§ 2510 et seq. ("Title III"), because they failed to include information concerning all of the previous wiretaps and related investigations. Id. at 2. Because of these omissions, the issuing judges could not have made fully-informed decisions concerning whether the wiretaps they authorized were actually necessary to achieve their stated goals, namely revealing the full scope of the Salazar DTO. See id. Because it is possible that the government had learned far more about the Salazar DTO than its individual wiretap applications let on, these applications did not represent the "full and complete statements" required by Title III. Id. While defendant at this point has no evidence that any

ORDER DENYING MOTION TO SUPPRESS
AND MOTION TO COMPEL DISCOVERY- 2

application actually omitted information material to a necessity finding, defendant seeks to compel discovery so that he may prove the existence of such omissions, which in turn will allow him to seek a Franks hearing. Dkt. # 515 at 4.[2] Because sifting through the records related to eight cases and 80 wiretap orders presents an unmanageable burden for the Court, defendant also argues that the wiretap evidence in his case must be suppressed on the grounds that it is impossible for the Court to do justice to defendant's Due Process rights. See Dkt. # 519 (Def. Reply Suppress) at 8-9 (asserting that the Court must review numerous wiretap applications for compliance with Title III).

Defendant also advances a "fruit of the poisonous tree" argument for compelling discovery and suppressing the fruits of the wiretaps in this case. Defendant argues that if a given wiretap (regardless of its target) was invalid, then its fruits should not have been used to support the applications for the wiretaps (authorized by Judge Jones and Judge O'Neill) that defendant has standing to challenge. Dkt. # 519 at 4; Dkt. # 534 at 5. Thus, defendant argues that he must be allowed to scrutinize the application (and evidence supporting said application) for every wiretap that produced evidence later included in the applications for defendant's wiretaps. Id. If any of those previous wiretap applications were flawed (i.e., for lack of necessity or probable cause), their fruits would have to be excised from the applications for defendant's wiretaps, compelling the Court to reassess the later wiretaps' validity. Id.

Moreover, defendant argues that the wiretap applications that he has reviewed failed to satisfy the "particularity" requirements of the Fourth Amendment and Title III, in that they did not provide details about the structure and hierarchy of the targeted DTOs to confirm that they actually were the type of organizations that Title III was written to target (or establish that a wiretap was necessary to investigate a given organization). Dkt. # 487 at 22, 31. Defendant contends that the applications and resulting orders were "unconstitutionally overbroad" because

---

[2] Defendant claims that he is entitled to supplemental discovery under Fed. R. Crim. P. 16, the Sixth Amendment, and the Local Rules of this District. Dkt. # 515 at 2, 7.

ORDER DENYING MOTION TO SUPPRESS
AND MOTION TO COMPEL DISCOVERY- 3

1  they never provided "a particularized description of the alleged Drug Trafficking
2  Organization[.]" Id. at 22.
3        Finally, defendant argues that the breadth and length of the government's investigation
4  into the Salazar DTO and other DTOs, and the sheer number of separate wiretap authorizations,
5  reaches beyond the scope of what Title III intended and violates the Fourth Amendment.
6  Defendant Salazar-Rojas and co-defendant Cruz-Cruz contend that the government has not been
7  investigating "organized crime," which Title III was meant to target, but a loosely-affiliated,
8  amorphous network of drug distributors (or an "open black market," as Cruz-Cruz characterizes
9  it). Dkt. # 487 at 31; Dkt. # 248 at 5 (CR13-49RSL). Defendants assert that the government
10 may not invoke Title III to secure wiretaps targeting this type of network.

## II. LEGAL STANDARDS

### (a)  Title III and Franks v. Delaware

13       Pursuant to the Title III, an application for a court-authorized wiretap must include "a full
14 and complete statement as to whether or not other investigative procedures have been tried and
15 failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."
16 18 U.S.C. § 2518(1)(c). The judge reviewing the application must determine whether the
17 government has properly shown that "normal investigative procedures" have failed or should not
18 be attempted. See 18 U.S.C. § 2518(3)(c). In essence, the government must overcome a
19 statutory presumption against granting a wiretap application by showing that the wiretap is
20 necessary to further an investigation, United States v. Gonzalez, Inc., 412 F.3d 1102, 1112 (9th
21 Cir. 2005); if law enforcement has not attempted to use traditional methods in a case before
22 resorting to a wiretap, then the court must reject the government's application, United States v.
23 Carneiro, 861 F.2d 1171, 1176 (9th Cir. 1988). This "necessity" requirement exists in order to
24 limit the use of wiretaps, as they are highly intrusive. United States v. Commito, 918 F.2d 95,
25 98 (9th Cir. 1990). When reviewing whether a wiretap authorization order was properly issued,
26 a court reviews de novo whether the application represented a "full and complete statement,"

ORDER DENYING MOTION TO SUPPRESS
AND MOTION TO COMPEL DISCOVERY- 4

and reviews the issuing judge's finding of necessity for abuse of discretion. United States v. Shryock, 342 F.3d 948, 975 (9th Cir. 2003); United States v. Yim, 2012 WL 395791, at *5 (W.D. Wash. Feb.7, 2012), aff'd sub nom., United States v. Drew Yim, 534 F. App'x 623 (9th Cir. 2013).

To obtain an evidentiary hearing under Franks v. Delaware, 438 U.S. 154 (1978), based on flaws in the government's wiretap application, defendant must make a preliminary showing that the government made an intentional or reckless misstatement or omission in its application that was material to the issuing judge's finding of necessity. Shryock, 342 F.3d at 975-77.

**(b)  Motion to Compel Discovery**

Federal Rule of Criminal Procedure 16 states the following:

> (E) Documents and Objects. Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
> (i) the item is material to preparing the defense . . .

Fed. R. Crim. P. 16(a)(1)(E). To compel discovery in a criminal case, "[a] defendant must make a threshold showing of materiality, which requires a presentation of 'facts which would tend to show that the Government is in possession of information helpful to the defense.'" United States v. Santiago, 46 F.3d 885, 894 (9th Cir. 1995) (quoting United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir. 1990). "Neither a general description of the information sought nor conclusory allegations of materiality suffice." Mandel, 914 F.2d at 1219. Where the government shows that complying with the request would be "unduly burdensome," it is incumbent on the district court to consider the government interests asserted in light of the materiality shown. Id.

## III. DISCUSSION

**(a)  Defendant's "Fruit of the Poisonous Tree" Argument**

Defendant argues that any evidence obtained as a result of any invalid wiretap application must be "excised" from the applications for the wiretaps that defendant has standing to

challenge, under the "fruit of the poisonous tree" doctrine as enshrined in 18 U.S.C. § 2515.[3] Dkt. # 519 at 5.  Defendant is incorrect.

Under Title III, an "aggrieved person" has standing to move to suppress the contents of an unlawfully-intercepted communication, 18 U.S.C. § 2518(10); an "aggrieved person" is defined as "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed."  18 U.S.C. § 2510(11).  The Supreme Court has interpreted these provisions as limiting standing to challenge wiretaps to persons whose Fourth Amendment rights were violated by an interception.  United States v. Gonzalez, Inc., 412 F.3d 1102, 1116 (9th Cir. 2005) (interpreting Alderman v. United States, 394 U.S. 165, 175-76, n. 9 (1969)).  Relying on Title III and Fourth Amendment precedent, the Ninth Circuit has held that "a defendant may move to suppress the fruits of a wire-tap only if his privacy was actually invaded; that is, if he was a participant in an intercepted conversation, or if such conversation occurred on his premises."  United States v. King, 478 F.2d 494, 506 (9th Cir. 1973).  It follows that defendant cannot challenge the fruits of wiretaps that did not target him or invade his privacy when those fruits are used against him.

While defendant acknowledges that he only has standing to challenge a handful of the wiretaps that he claims may be invalid, he nevertheless claims that he may challenge the wiretaps intercepting and targeting him to the extent that their applications relied on evidence obtained from previous wiretaps that defendant has no standing to challenge.  Dkt. # 519 at 4. Defendant appears to rely on the fact that § 2515 does not mention Title III's standing requirement.  However, this argument is unpersuasive.  Defendant does not cite, and this Court

---

[3] This section states the following:
> Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

18 U.S.C. § 2515.

ORDER DENYING MOTION TO SUPPRESS
AND MOTION TO COMPEL DISCOVERY- 6

has not found, any case holding that a defendant who otherwise lacks standing to challenge the fruits of a wiretap gains the power to do so when these fruits are later used to secure a wiretap that he does have standing to challenge.[4]  Other courts have squarely rejected this argument. United States v. Scasino, 513 F.2d 47, 49 (5th Cir. 1975) (rejecting the notion that a defendant may "assert indirectly what he cannot assert directly.").[5]  Because defendant cannot attack the fruits of wiretaps that he lacks standing to challenge, defendant cannot attack "his" wiretaps (those he has standing to challenge) just because their applications relied on these fruits.  In other words, defendant cannot have evidence "excised" from wiretap applications where collecting this evidence did not invade his privacy.

Thus, defendant's only colorable "fruits" argument is that evidence that led to wiretaps that he can challenge (i.e., certain wiretaps authorized by Judge Jones) was the fruit of illegal wiretaps that he also has standing to challenge (i.e., certain wiretaps authorized by Judge O'Neill).[6]  This raises the issue of whether the wiretap orders defendant can challenge are invalid under the Constitution or Title III, to which the Court now turns.

**(b)   Defendant's Particularity Argument**

Defendant argues generally that the wiretap applications he has reviewed failed to satisfy the Fourth Amendment's particularity requirement, as well as Title III's particularity requirements,[7] because they targeted an "amorphous and undefined" criminal organization.

---

[4] While the Ninth Circuit rejected this proposition in United States v. Mercado, 110 F. App'x 19, 21 (9th Cir. 2004); the Court acknowledges that, as an unpublished case from before 2007, Mercado may not be cited as authority in this unrelated case.

[5] This argument is also inconsistent with settled Fourth Amendment precedent.  See Illinois v. Gates, 462 U.S. 213, 255 (1983) ("[S]tanding to invoke the exclusionary rule has been limited to situations where the Government seeks to use such evidence against the victim of the unlawful search."); Rakas v. Illinois, 439 U.S. 128, 133 (1978) ("Fourth Amendment rights are personal rights which . . . may not be asserted vicariously.") (internal citation and quotation marks omitted).

[6] Because the government will not use the fruits of the wiretaps authorized by Judge O'Neill at trial, these wiretaps are relevant only insofar as the applications presented to Judge Jones relied on their fruits.

[7] While defendant expressly invokes Fourth Amendment particularity, Dkt. # 487 at 27, defendant later abruptly switches to discussing the statute's requirements, id. at 30.  The Court assumes that defendant

ORDER DENYING MOTION TO SUPPRESS
AND MOTION TO COMPEL DISCOVERY- 7

Claiming that the applications targeted an "amorphous entity" that the government either called the "Salazar-Rojas DTO," the "Rodriguez-Rivera DTO," or other names depending on which particular DEA office was handling the investigation and applying for a given wiretap, defendant alleges the following:

> No facts are asserted regarding its genesis, location, venues of operation, putative leadership, putative members, or other particulars to assist the court in identifying the persons to be seized, scope of the objectives, or necessity for the multitudinous orders. The absence of such particularized information renders it impossible to assess whether the overall objectives of the wiretap applications and orders have been achieved at any particular time.

Dkt. # 487 at 31. For the reasons provided supra, this particularity argument only matters insofar as it undermines those wiretaps that defendant has standing to challenge. However, defendant does not specify which of the wiretap applications he has reviewed bear these deficiencies.

Precedent and the existing record do not support defendant's argument. The Fourth Amendment states that warrants must "particularly describ[e] the place to be searched, and the person or things to be seized." U.S. Const. amend. IV. The Ninth Circuit has held that wiretap orders satisfy the Fourth Amendment's particularity requirement where they identify the phone line to be tapped and the nature of the conversations to be intercepted. United States v. Carneiro, 861 F.2d 1171, 1179 (9th Cir. 1988) (also holding that wiretap order satisfied Title III's particularity requirements by meeting this standard). Defendant cites no authority clearly stating that wiretap applications, as a constitutional matter, fall under different requirements. See United States v. Gaines, 639 F.3d 423, 432 (8th Cir. 2011) ("[Federal agent's] affidavit and the district court's subsequent wiretap order did not run afoul of the Fourth Amendment for lack of particularity because the Fourth Amendment requires that a wiretap application (and subsequent wiretap order) identify only the telephone line to be tapped and the particular conversations to be seized.") (internal citation and quotation marks omitted). Defendant has not identified a wiretap

---

intended to raise his particularity argument under both the Constitution and Title III.

ORDER DENYING MOTION TO SUPPRESS
AND MOTION TO COMPEL DISCOVERY- 8

1  application (or order) that was deficient in this regard.

2  Furthermore, defendant's argument is not supported by Title III precedent. To be sure,
3  there are cases where the Ninth Circuit has found the government's wiretap affidavits
4  satisfactory where they "etched the nature and contours" of a criminal organization and detailed
5  the "nature and extent" of an investigation. United States v. Baker, 589 F.2d 1008, 1011 (9th
6  Cir. 1979); United States v. Abascal, 564 F.2d 821, 826 (9th Cir. 1977). However, the Court has
7  found no per se rule that a wiretap application must describe the "structure, hierarchy and
8  operations" of a criminal organization before the wiretap may be granted (as defendant insists,
9  Dkt. # 487 at 30), especially where the scope of the organization is exactly what the government
10 is attempting to investigate. Nor can this be read into the statutory requirements for wiretap
11 applications listed in 18 U.S.C. § 2518.

12 While precedent clearly states that the government may not merely characterize a case as
13 involving a "drug conspiracy" to justify a wiretap, United States v. Simpson, 813 F.2d 1462,
14 1472 (9th Cir. 1987), the focus of the Simpson court (contrary to defendant's suggestion) was
15 not on whether the government could prove that it was investigating a highly-organized
16 syndicate, but whether the government could show that this investigation required a wiretap
17 instead of reliance on traditional investigative methods. See id. ("We must be careful not to
18 permit the government merely to characterize a case as a drug conspiracy . . . that is therefore
19 inherently difficult to investigate. The affidavit must show with specificity why in this particular
20 investigation ordinary means of investigation will fail."). Indeed, what defendant describes as
21 the "particularity requirement" for wiretap applications and affidavits appears to be part of the
22 necessity requirement: when investigating a criminal organization, the government's wiretap
23 application must provide sufficient case-specific facts to establish the necessity of a wiretap to
24 further investigate the organization (in addition to probable cause). See id.; United States v.
25 Garcia-Villalba, 585 F.3d 1223, 1229 (9th Cir. 2009).

26 Defendant has not specifically identified a single wiretap application that failed to show

27
28 ORDER DENYING MOTION TO SUPPRESS
   AND MOTION TO COMPEL DISCOVERY- 9

necessity on its face. Defendant generally states that, in the wiretap applications he has reviewed, "no facts" were asserted as to "particulars" to assist judges in "identifying . . . necessity;" however, the Court can readily identify affidavits submitted to Judge Jones and Judge O'Neill that explained at length how traditional investigative methods had either failed or were likely to fail to expose targets' co-conspirators and help build effective cases against them, citing case-specific details. E.g., Dkt. # 513 (Truong Aff.) ¶¶ 143-204 (supporting application related to Oct. 9, 2012 wiretap order by Judge Jones); Dkt. # 531-2 (Manning Aff.) ¶¶ 63-115 (supporting application related to June 18, 2012 wiretap order by Judge O'Neill). Defendant has not shown how the government's required necessity showings were facially deficient in any application that he has standing to challenge, and has instead attacked the absence of showings that the government is not required to make. Defendant's "particularity" challenge fails.[8]

### (c)     Defendant is Not Entitled to a Franks Hearing or to Further Discovery

Defendant argues that the government's wiretap applications did not provide a "full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued[.]" 18 U.S.C. § 2518(1)(b). Specifically, defendant argues that, by omitting information about the related investigations and the evidence gathered from various wiretaps from these applications, the government deprived judges of information material to their necessity determinations. Defendant suggests that this entitles him to relief on several different bases. First, the wiretap evidence against defendant should be suppressed because the government failed to make full and complete statements about the course of its investigation. Second, because a related investigation may have rendered defendant's wiretaps unnecessary, defendant must be allowed to review the evidentiary records from these investigations, so that he may prove that he is entitled to a Franks hearing due to omissions by the government in its wiretap applications. Defendant finally argues that reviewing the

---

[8] While defendant argues that this Court must analyze each wiretap application he challenges to determine whether necessity existed, citing Carneiro, 861 F.2d at 1176, defendant has failed to point out where necessity was not facially shown. Thus, the Court's analysis here is sufficient.

ORDER DENYING MOTION TO SUPPRESS
AND MOTION TO COMPEL DISCOVERY- 10

additional discovery related to these separate investigations would prove practically unmanageable for the Court, thereby threatening defendant's Due Process rights.[9] Defendant emphasizes that such a lengthy, massive and fragmented investigation was not within the contemplation of the framers of Title III.

### (i) Necessity Omissions and "Full and Complete Statements"

The Court first addresses defendant's suggestion that the fruits of his wiretaps may be suppressed due to the government's failure to make "full and complete statements" in its wiretap applications. Defendant incorrectly suggests that, under the statute, the government's alleged omissions require suppression regardless of their materiality or the motive behind the omissions. Dkt. # 519 at 5-6.

This Circuit analyzes misstatements and omissions from wiretap applications under the framework articulated in Franks v. Delaware, 438 U.S. 154 (1978). E.g., United States v. Ippolito, 774 F.2d 1482, 1486 n. 1 (9th Cir. 1985) (applying Franks analysis to misstatements and suggesting that the same analysis would apply to omissions); United States v. Blackmon, 273 F.3d 1204, 1209 (9th Cir. 2001) (relying on Ippolito and conducting a similar analysis for the omissions in that case). Thus, an omission related to necessity only warrants suppression (a) where it is material to a necessity determination, Blackmon, 273 F.3d at 1209; (b) where, after correcting the omission, it is apparent that there was no necessity for the wiretap, id.; and (c) where the government's omission was intentional or made with "reckless disregard for the truth," United States v. Staves, 383 F.3d 977, 982 (9th Cir. 2004).[10] The Court has found no case in this Circuit ruling that an omission warranted suppression under Title III where the Court

---

[9] This discovery would include the many wiretap applications that defendant does not have standing to challenge but that defendant claims the Court must review for necessity. Dkt. # 523 at 5. However, as explained supra, the Court need not assess the validity of wiretap orders that defendant has no standing to challenge.

[10] While Blackmon did not analyze whether the misstatements and omissions in that case were deliberately or recklessly made, Blackmon relied on the framework from Ippolito, 273 F.3d at 1209; subsequent cases have confirmed that, under Ippolito and Franks, intent or recklessness is necessary, see Staves, 383 F.3d at 982.

ORDER DENYING MOTION TO SUPPRESS
AND MOTION TO COMPEL DISCOVERY- 11

did not rely on Franks analysis. The Second Circuit recently addressed the issue of whether Title III's "full and complete statement" language requires suppression where the alleged omissions did not fall under Franks; the court squarely rejected this proposition, noting that every Circuit faced with this issue has relied on Franks instead of the statute by itself. United States v. Rajaratnam, 719 F.3d 139, 152 n. 16 (2d Cir. 2013).

Therefore, the question presented is whether defendant is entitled to a Franks hearing, or to further discovery in support of his request for a Franks hearing.

### (ii) Motion to Compel Discovery to Support Request for a Franks Hearing

Defendant conceded at oral argument that he cannot yet make the requisite preliminary showing under Franks that the government intentionally or recklessly made a material misstatement or omission. Defendant moves to compel additional discovery so that he can find the evidence to make this showing and compel a Franks hearing. The Court finds that defendant is not entitled to discovery from multiple other investigations and dozens of wiretaps, because it is simply too speculative that this discovery will allow him to make his required showing under Franks.

Defendant seeks supplemental discovery in order to show that some investigation had acquired evidence rendering the wiretaps targeting or intercepting defendant's communications unnecessary. This would, the Court presumes, be evidence showing that the scope and operations of the Salazar DTO had been completely revealed and/or that the DTO could be thoroughly investigated without an additional wiretap. See Blackmon, 273 F.3d at 1209 (affidavit contained material misstatement where government informants had greater knowledge of "the scope of the criminal enterprise" than affidavit indicated). Defendant emphasizes that he has not seen many of the wiretap affidavits or almost any of the evidence collected in other investigations, Dkt. # 523 at 4-5, although the government contends that it provided defendant with a significant amount of discovery related to the California investigation (in which defendant's calls were intercepted) over a year ago. Dkt. # 522 at 3.

ORDER DENYING MOTION TO SUPPRESS
AND MOTION TO COMPEL DISCOVERY- 12

Defendant's central evidence that the government may have omitted material information is (a) the fact that different investigations had certain overlapping targets; (b) the fact that government agents in different investigations provided evidence to each other due to these overlaps; and (c) the fact that certain wiretap applications did not mention certain past or ongoing investigations. Dkt. # 523 at 3-4.  The Court finds no clear indication from defendant's proffer that any other investigation in any other jurisdiction would have acquired sufficient evidence as to the scope of the Salazar DTO to render defendant's wiretaps unnecessary to investigate its scope and its members.  Notably, the government has no intention to use evidence obtained from any wiretap not authorized by Judge Jones in its case in chief.  Also, defendant has not identified any evidence in his case (aside from the wiretap orders in question) that was the fruit of an investigation in some other District.  While certainly not conclusive evidence that defendant's wiretaps were not redundant, the Court finds this suggestive that these other investigations did not reveal anything material to investigating the Salazar DTO that the government did not share in its applications to Judge Jones.

As it stands, there is too little here to justify the fishing expedition that defendant asks the Court to permit; specific facts do not sufficiently establish the materiality of the evidence he seeks to discover.  See Santiago, 46 F.3d at 894 (Fed. R. Crim. P. 16 requires a party seeking discovery to "make a showing of the materiality of the information sought.").  Therefore, the Court denies defendant's motion to compel additional discovery.[11]

### (iii) Defendants' Remaining Statutory and Constitutional Arguments

Defendant argues that the government violated his Fourth Amendment rights by choosing to conduct a sprawling and fragmented investigation and prosecution.  See Dkt. # 515 at 2. Defendants Salazar-Rojas and Cruz-Cruz jointly argue that a lengthy investigation of an amorphous criminal network involving 80 separate wiretaps reaches far beyond Title III's

---

[11] Although defendant seeks to compel discovery under Rule 16, the Sixth Amendment and this District's Local Rules, the Court finds no basis to grant the requested relief under the latter two in light of the above.

ORDER DENYING MOTION TO SUPPRESS
AND MOTION TO COMPEL DISCOVERY- 13

purpose of enabling the government to investigate "organized crime" while protecting privacy. Dkt. # 487 at 31; Dkt. # 248 at 5 (CR13-49RSL).  The Court rejects these arguments.

Defendants have not cited, and this Court has not found, any case law suggesting that using multiple wiretaps to assist multiple lengthy investigations into multiple interlocking criminal groups in multiple jurisdictions violates a given target's Fourth Amendment rights due to the "overbreadth" of the "overall investigation."  Nor have defendants cited any case in which wiretap interceptions were suppressed because the targeted organization was found to be insufficiently "organized" to fall under Title III.  The Court declines to set such precedent, here. Criminal organizations may work in tandem or have common members, operating either as autonomous units of a larger syndicate or entirely independently.  The number of wiretaps and length of time necessary to expose and unravel any one such organization can be substantial, especially in the era of disposable cell phones.  While defendant Salazar-Rojas suggests that the government "carved" an overarching investigation of one syndicate into numerous pieces, Dkt. # 523 at 2, the existing record can just as easily suggest separate, tangentially-related investigations where local DEA offices had to secure wiretap authorizations from federal judges in their Districts.  Either way, the Court is convinced that, in pursuing multiple wiretaps in support of multiple investigations into the various alleged DTOs, the government stayed within the legal scope and purpose of Title III.

## IV.  CONCLUSION

For all of the foregoing reasons, the Court DENIES defendant Salazar-Rojas' motion to suppress, Dkt. # 487, which defendants Cruz-Cruz, Gutierrez and Cruz-Olivero join, Dkt. # 491; Dkt. # 492; Dkt. # 247 (CR13-49RSL); and DENIES defendant Salazar-Rojas' motion to compel discovery, Dkt. # 515.

DATED this 18th day of February, 2015.

*Robert S. Lasnik* (signature)
Robert S. Lasnik
United States District Judge